UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CARLOS TORRES MADRIGAL,

                Petitioner,

    v.

KIRSTEN NIELSEN, et al.,

                Respondents.

Case No. C18-843-JCC-JPD

REPORT AND RECOMMENDATION

I. INTRODUCTION

Petitioner, who is currently detained at the Northwest Detention Center in Tacoma, Washington, brings this 28 U.S.C. § 2241 immigration habeas action *pro se* to obtain release from detention or a bond hearing. The Government has moved to dismiss, arguing that petitioner's detention is statutorily authorized and he has already received a bond hearing. Petitioner did not file a response. Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends that the Government's motion to dismiss, Dkt. 9, be GRANTED, petitioner's habeas petition be DENIED, and this action be DISMISSED with prejudice.

REPORT AND RECOMMENDATION - 1

II.     BACKGROUND

Petitioner is a native and citizen of Mexico who entered the United States at an unknown location and without inspection. Dkt. 10-1 at 4. He first came to the attention of U.S. Immigration and Customs Enforcement ("ICE") on or about October 13, 2017, while he was incarcerated at the Grant County Jail in Ephrata, Washington on a charge of Driving while License Suspended. *Id.* at 3. An immigration official interviewed petitioner and determined that he is a citizen and national of Mexico without the proper documents to be in the United States. Dkt. 11 at ¶ 4. Petitioner was served with a Notice to Appear, charging him as removable for being present without inspection. Dkt. 10-2; 8 U.S.C. § 1182(a)(6)(A)(i) ("[A noncitizen] present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible.").

On October 18, 2017, Grant County Corrections released Petitioner to the Department of Homeland Security ("DHS") and ICE. Dkt. 10-1 at 4. He was subsequently transferred to the Northwest Detention Center. Dkt. 1. On December 11, 2007, Petitioner was scheduled for a Master Hearing and a Bond Hearing. Dkt. 11 at ¶ 7. Petitioner withdrew his bond request, and the hearing was reset for January 11, 2018. *Id.*

On January 11, 2018, an immigration judge ("IJ") conducted a custody redetermination hearing; petitioner was represented by counsel. Dkt. 10-3. The IJ denied bond, later explaining in his written decision, "After considering all evidence and argument presented by the parties, the Court found that [petitioner] failed to meet his burden to show that he is not a danger to the community." *Id.* at 3.

The IJ considered the factors set forth in *Matter of Guerra*, 24 I & N Dec. 37, 40 (BIA 2006). *Id.* The IJ also explained, "An Immigration Judge 'should only set a bond if he first

REPORT AND RECOMMENDATION - 2

determines that the [noncitizen] does not present a danger to the community.'" *Id.* at 4 (quoting *Matter of Siniauskas*, 27 I & N Dec. 207 (BIA 2018)).  The IJ considered the evidence petitioner presented through his counsel.  *Id.*  The IJ also considered petitioner's criminal history, which included a February 29, 2016 conviction for Residential Burglary, Theft of a Motor Vehicle, and Malicious Mischief.  *Id.*  Four months after his conviction, petitioner was arrested for a controlled substances offense.  *Id.*  On July 25, 2016, petitioner was convicted of possession of a stolen vehicle.  *Id.*  In 2017, he was arrested for driving with a suspended license.  *Id.*  Petitioner admitted that the foregoing criminal history was correct.  *Id.*  "When the Court questioned [petitioner] about why he had committed so many crimes in such a short period of time, [petitioner] attributed his behavior to going through [a] difficult time in his life, and having absent parents."  *Id.*

The IJ considered the evidence in petitioner's favor, including his family ties in the United States and his length of residency in this country.  *Id.*  The IJ explained, "However, the Court was concerned by the serious nature of [petitioner's] recent criminal conduct.  Residential burglary is a crime that is violent in nature. . . .  Additionally troubling is that [petitioner] seemed to have adopted a pattern of delinquent behavior.  Even after the [petitioner] suffered convictions and served a sentence in juvenile detention, mere months later, he reoffended."  *Id.* at 4-5.  The IJ concluded, "Given [petitioner's] recent, repeated, and violent criminal history, the Court found that [petitioner] constituted a danger to the community and his connections to the United States do not mitigate the risk of danger he poses.  As such, the Court is precluded from considering releasing [petitioner] on bond."  *Id.* at 5.  The IJ denied petitioner's request for custody redetermination.  *Id.*

REPORT AND RECOMMENDATION - 3

1    Petitioner appealed the decision to the Board of Immigration Appeals ("BIA"). *Id.* On
2 April 27, 2018, the BIA affirmed. Dkt. 11 at ¶ 12; Dkt. 10-4. Petitioner, through counsel, also
3 filed an Application for Asylum and for Withholding of Removal. Dkt. 11 at ¶ 12. He was
4 scheduled for a merits hearing before an IJ in Tacoma on August 13, 2018.[1] *Id.* at ¶ 15.

5    Petitioner filed the instant habeas petition on June 11, 2018. Dkt. 1. In it, he claims that
6 he has been detained for over seven months and has not had a bond hearing. *Id.* at 1. He asserts
7 that his prolonged detention without a bond hearing violates the Fifth Amendment's Due Process
8 Clause and the Eight Amendment's Excessive Bail Clause. *Id.* at 2. He seeks his release or, in
9 the alternative, a bond hearing where the burden is on the government to prove by clear and
10 convincing evidence that he presents a flight risk or danger to the community. *Id.*

11    On June 16, 2018, the Court served the petition and ordered respondents to file a return
12 memorandum. Dkt. 4. The same day, the Court directed the Office of the Federal Public
13 Defender ("FPD") to contact petitioner regarding representation. Dkt. 3. The Court explained
14 that petitioner's habeas petition presented an issue of first impression in this district: whether the
15 prolonged detention without a bond hearing of a noncitizen who is in removal proceedings
16 violates the Due Process Clause. *Id.* On July 13, 2018, the FPD filed a status report. Dkt. 8.
17 After speaking with petitioner, the FPD determined that petitioner did not understand the
18 gravamen of his *pro se* pleading and already had a bond hearing. *Id.* Thus, the FPD and
19 petitioner agreed that it did not make sense for the Court to appoint counsel in his case. *Id.*

20    On July 16, 2018, the Government filed its return memorandum and motion to dismiss.
21 Dkt. 9. Petitioner did not file a response.

---

[1] The parties have not apprised the Court of the outcome of this hearing.

REPORT AND RECOMMENDATION - 4

III.    DISCUSSION

A.    Petitioner's detention is statutorily authorized and does not violate due process

Title 8 U.S.C. § 1226 provides the framework for the arrest, detention, and release of non-citizens, such as petitioner, who are in removal proceedings. 8 U.S.C. § 1226; *see also Demore v. Kim*, 538 U.S. 510, 530 (2003) ("Detention during removal proceedings is a constitutionally permissible part of that process."). Section 1226(a) grants DHS the discretionary authority to determine whether a noncitizen should be detained, released on bond, or released on conditional parole pending the completion of removal proceedings, unless the noncitizen falls within one of the categories of criminals described in § 1226(c), for whom detention is mandatory.[2] 8 U.S.C. § 1226.

When a noncitizen is arrested and taken into immigration custody pursuant to § 1226(a), ICE makes an initial custody determination, including the setting of bond. *See* 8 C.F.R. § 236.1(c)(8). After the initial custody determination, the detainee may request a bond redetermination by an IJ. 8 C.F.R. § 236(d)(1). At the bond redetermination hearing, the burden is on the detainee to show to the satisfaction of the IJ that he warrants release on bond. *See In re Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006). In making a bond decision under § 1226(a), an IJ must consider whether the detainee "is a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *Id.* (citing *In re Patel*, 15 I. & N. Dec. 666 (B.I.A. 1976)). An IJ also may consider any number of discretionary factors, including: (1) whether the detainee has a fixed address in the United States; (2) the detainee's length of

---

[2] Although the relevant statutory sections refer to the Attorney General, the Homeland Security Act of 2002, Pub. L. No. 107-296 § 471, 116 Stat. 2135 (2002), transferred most immigration law enforcement functions from the Department of Justice ("DOJ") to DHS, while the DOJ's Executive Office for Immigration Review retained its role in administering immigration courts and the Board of Immigration Appeals. *See Hernandez v. Ashcroft*, 345 F.3d 824, 828 n.2 (9th Cir. 2003).

REPORT AND RECOMMENDATION - 5

residence in the United States; (3) the detainee's family ties in the United States, and whether they may entitle the detainee to reside permanently in the United States in the future; (4) the detainee's employment history; (5) the detainee's record of appearance in court; (6) the detainee's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the detainee's history of immigration violations; (8) any attempts by the detainee to flee persecution or otherwise escape authorities; and (9) the detainee's manner of entry to the United States. *Id.*

If the IJ denies bond, the detainee may appeal to the BIA. 8 C.F.R. § 236.1(d)(3). If the BIA affirms the IJ's decision, the detainee may seek habeas relief from the district court. *Leonardo v. Crawford*, 646 F.3d 1157, 1159-61 (9th Cir. 2011); *Sun v. Ashcroft*, 370 F.3d 932, 941 (9th Cir. 2004). Federal district courts have jurisdiction to review bond hearing determinations for constitutional claims and legal error, *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011), but they cannot second guess an IJ's discretionary judgment regarding the application of § 1226(a), 8 U.S.C. § 1226(e).

Once an IJ has made an initial bond redetermination, a detainee's request for a subsequent bond redetermination must be made in writing and must show that the detainee's circumstances have changed materially since the prior bond redetermination. 8 C.F.R. § 1003.19(e).

In this case, there is no dispute that petitioner is detained under § 1226(a). Because his detention is statutorily authorized, he is not entitled to release. In addition, petitioner makes no argument that the IJ committed constitutional or legal error in denying bond.[3] The Court has conducted an independent review of the IJ's bond decision and finds no error; the IJ considered

---

[3] Indeed, in his habeas petition, he claims that he never received a bond hearing.

REPORT AND RECOMMENDATION - 6

all of the evidence and applied the appropriate legal standards. Petitioner's detention complies with the statutory and regulatory requirements.

Petitioner nevertheless seeks a bond hearing where the burden is on the government. *See* Dkt. 1 at 2. Until recently, Ninth Circuit jurisprudence required noncitizens detained under § 1226(a) to be provided automatic bond hearings every six months at which the government was required to justify continued detention by clear and convincing evidence. *Rodriguez v. Robbins*, 804 F.3d 1060, 1084-85, 1087 (9th Cir. 2015) ("*Rodriguez III*"), *rev'd sub nom Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). In *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), the Supreme Court reversed, explaining that the Ninth Circuit had misapplied the canon of constitutional avoidance and that "[n]othing in § 1226(a)'s text . . . even remotely supports the imposition of" periodic bond hearings where the government bears the burden. *Id.* at 847. The Supreme Court did not decide whether the Constitution requires such periodic hearings, and remanded to the Ninth Circuit for consideration of that question.[4]

On the facts of this case, the Court concludes that due process does not require an additional bond hearing at this time. "Due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). To determine the requirements of due process, courts consider (1) the private interest affected, (2) the government's interest, and (3) the value added by alternative procedural safeguards to what has already been provided in the particular situation before the court. *Id.* at 334-35. Petitioner's freedom from detention is at stake, which is an important interest that "lies at the heart of the liberty that [the Due Process] Clause protects." *Rodriguez III*, 804 F.3d at 1066. Petitioner has been detained for over 10 months, and it has been over seven months since

---

[4] The Ninth Circuit has not yet issued its opinion.

REPORT AND RECOMMENDATION - 7

his bond hearing.  The government also has legitimate interests that are implicated by petitioner's continued detention: assuring he will appear if ultimately ordered removed and protecting the public from him given his criminal history.  *Soto v. Sessions*, No. 18-2891, 2018 WL 3619727, at *4 (N.D. Cal. July 30, 2018) (citing 8 C.F.R. § 236.1(c)(8) (allowing release from detention if noncitizen "is likely to appear for any further proceeding" and "would not pose a danger to property or persons"); *Zadvydas v. Davis*, 533 U.S. 678, 690-91 (2001)).  As to the third factor, petitioner has already received an individualized bond hearing before a neutral judge, and the only substantive difference between this hearing and the one he seeks is a shift in the burden of proof.  "[W]hile as a theoretical matter a shifted burden could assist an immigration detainee, [petitioner] has failed to make any showing that []he would benefit as a practical matter in the circumstances of [his] case." *Soto*, 2018 WL 3619727, at *5.  Weighing the three *Mathews* factors, the Court concludes that petitioner has received all of the due process protections to which he is entitled at this time.

B.     <u>Petitioner fails to state an Eighth Amendment claim</u>

Petitioner claims that his "prolonged detention without a hearing on danger and flight risk violates . . . the Eight Amendment's Excessive Bail Clause."  Dkt. 1 at 2.  The Eighth Amendment states, "Excessive bail shall not be required."  U.S. Const. Eighth Am.  "[T]he Excessive Bail Clause prevents the imposition of bail conditions that are excessive in light of the valid interests the state seeks to protect by offering bail." *Galen v. Cnty. of L.A.*, 477 F.3d 652, 660 (9th Cir. 2007).  "To determine whether the Excessive Bail Clause has been violated, [courts] look to the valid state interests bail is intended to serve for a particular individual and judge whether bail conditions are excessive for the purpose of achieving those interests." *Id.*

Because bail has not been set in petitioner's case, he has no basis on which to argue that the bail is excessive.  Accordingly, he cannot state a claim for a violation of the Eighth Amendment.

### IV.    CONCLUSION

The Court recommends that the Government's motion to dismiss, Dkt. 9, be GRANTED, petitioner's habeas petition be DENIED, and this action be DISMISSED with prejudice.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **September 21, 2018**.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **September 28, 2018.**

This Report and Recommendation is not an appealable order.  Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge acts on this Report and Recommendation.

Dated this 31st day of August, 2018.

*/s/ James P. Donohue*
_____
JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION - 9